## Wiglesworth v. Smith et al.

November 4, 1949.

Swinford & Sims for appellant.

John M. Keith for appellees.

JUDGE THOMAS—Affirming.

Prior to his death in January, 1948, Harve Baird executed his will directing in its first clause the payment of his debts. Clauses 2 and 3 direct that:

"2. All the rest and residue of my estate of whatever the same may consist whether real or personal or mixed property I will devise and bequeath to my wife, Mary Catherine Baird, her life time with the right to use any or all of the same if in her opinion it may be necessary for her support and maintenance.

"3. If at the death of my wife she has not used and expended all of my estate, I will and devise and bequeath any remainder to H. C. (Doc) Wiglesworth and his wife, Lola Wiglesworth, in fee. It is to be understood that this item is to be no restraint on my wife's use of my property but just in the event any remains at her death I make this provision because of the kindness and care they have shown toward my wife and myself.

"I name my wife Executrix without bond."

The will was duly probated in the county court of Harrison County where testator resided, and where his property was located, but his widow declined to qualify and Claude Smith was appointed administrator with the will annexed.

There were no children born to the Bairds and both of them were advanced in years at the time of testator's death and when he executed his will. Having no descendants his heirs, if he had any, but—which the record does not show—were altogether collateral of next of kin. The Bairds were each in more or less impaired health for some time prior to the execution of the will. H. C. Wiglesworth and his wife, Lola, were near neighbors to the Bairds and they, at least to some extent, administered to their wants and necessities. Testator at the time of his death and at the time of the execution of his will owned but a limited amount of personal property which was all consumed in the payment of his

debts and the cost of administration, leaving his net estate consisting of the two tracts of real estate stated in the will, i. e., a 62-acre tract and another parcel containing only two acres. The income from these tracts was insufficient to maintain and support testator's widow in the manner clearly indicated by his will. Conceiving that under her husband's will she had the right to sell the real estate in order to procure funds for her maintenance and support she entered into a contract with Llewellyn Smith to convey to him the real estate mentioned in the will and prepared and tendered to him a deed to that effect, but he declined to accept it and pay the agreed consideration on the ground that she did not possess the power under her husband's will to sell his real estate.

After Llewellyn Smith refused to accept the deed executed and delivered to him by Mrs. Baird she and the administrator, with the will annexed, filed this action in the Harrison circuit court against Wiglesworth and wife and Llewellyn Smith for a construction of testator's will and for judgment compelling him to accept the deed and pay the consideration. The prayer of the petition was: ''Wherefore plaintiffs pray for a judgment from this Court construing the will of Harve Baird, adjucating (sic) the rights of the parties herein and directing the payment of the contract sale costs herein and all other and equitable relief to which this cause belongs.''

Appropriate subsequent proceedings made the issues and the cause was submitted to the court. Judgment was rendered on May 1, 1948, decreeing that ''the defendant, Llewellyn Smith, is ordered and directed to accept a general warranty deed from the said Mary Catherine Baird and pay the contract price therefore (sic), to which rulings of the Court, the defendants, H. C. Wiglesworth and Lola Wiglesworth, except, and pray an appeal to the Court of Appeals which is granted, * * *.'' From that judgment Wiglesworth and wife prosecute this appeal, but there is no appeal from the judgment by Llewellyn Smith who agreed to purchase the land from testator's widow.

It is argued by counsel for appellants that the will of testator in this case did not confer power of sale of his real estate upon his wife, nor expressly provide

that she might encroach upon the corpus if necessary to carry out his dominant purpose to provide for her, but only gave her the use and income of the property, including, of course, the real estate, during her life. Furthermore, that should the will be construed as empowering the widow to encroach upon the corpus of testator's real estate then she personally could not make sale thereof, but could only procure a sale by direction of a court of competent jurisdiction to so adjudge and direct the sale. Also, it is contended by counsel that even in the case of a judicial sale it "becomes the duty of the court to appoint a trustee whose duty it is to receive and hold the proceeds of said sale and apply the same to the needs of the life tenant as they may arise and always under the supervision of the court."

We are therefore confronted with the questions of (1) whether the wife may individually convey the involved real estate and appropriate the proceeds for the purpose stated by the testator in his will without the intervention of a court, and (2) whether or not a trustee should be appointed and the proceeds of the real estate be allotted by the court to the widow from time to time as it may conclude is necessary to carry out the purpose and intention of the testator as he intended in his will.

The solution of those questions is to be determined from the language of the entire will as viewed from its four corners, under the universally applied rule that the intention of a testator as so gathered always prevails over all other subordinate rules, limited only by the qualification that the intention of the testator as so gathered is not prohibited by some mandatory statute within the jurisdiction, or is against some rule of public policy. One of the latest cases in this court so declaring is Hanks v. McDanell, 307 Ky. 243, 210 S. W. 2d 784. An earlier case is Feltman v. Butts, 8 Bush 115, while an intermediate case so declaring is Trustees of Presbyterian Church of Somerset, Ky. v. Mize, 181 Ky. 567, 205 S. W. 674, 2 A. L. R. 1237. In the latter publication (2 A. L. R.) there is an annotation beginning on page 1243 where all of the law up to that date touching the questions here involved is discussed and wherein it is pointed out that technical words or even

express declarations as to the quantity of title, may be overcome by language employed in other parts of the will in order to arrive at the true intention of the testator. To undertake to list the cases applying the rules so stated, with text authorities in full accord therewith, would require the writing of a book instead of an opinion in a specific case, since "no will has a twin brother." See 57 A. J. 717, sec. 1123. Supporting text is found in the same volume, page 721, sec. 1128 which says: "Where a will contains provisions which are apparently inconsistent or repugnant, every effort must be made so as to construe the instrument as to harmonize the conflicting words, phrases, or clauses. It is, therefore, permissible, in order to enable the court to uphold all the provisions of the will, to resort to every reasonable intendment, to reverse the relative order of the devises or bequests, and to transpose the different provisions of the will, if it is possible thereby to render them consistent and give effect to each."

Applying those rules in ascertaining the intention of the testator we find that he devised to his wife his entire property to be used by her "if in her opinion it may be necessary for her support and maintenance." Furthermore, if "any remains at her death," then Wiglesworth and his wife should receive it. The word "remainder" in that connection definitely means remnant of the corpus of testator's property which his widow did not consume pursuant to her opinion was necessary for her complete maintenance and support. That language carries with it the clear implication that if testator's widow "in her opinion" concluded that it was necessary to sell the property for her support and maintenance, she might do so. If the income from the real estate, as shown by the record, which was all that the widow received under the will, was not necessary for her support and maintenance—which was the dominant purpose of the testator—it necessarily results that he intended for her to encroach upon the property devised to her, but since real estate as such, cannot be spent for the necessities of life, including shelter, food, clothing and medical care, which can only be provided with cash, testator by clear implication conferred upon his wife the power to sell the real estate and convey a good title for the purpose of acquiring funds to supply such necessities; with only this qualification, that if any were

left at her death it should go to Wiglesworth and his wife. As we have seen, the court so determined and with which we are clearly of the opinion was the testator's intention and purpose when he wrote his will, and to which we agree.

It is also equally clear that he did not desire that the appropriation of the proceeds of his real estate when so sold by his widow be directed by a court, or that the estate (small as it was) should be encumbered with the costs of a court proceeding or the cost of handling the funds through the intervention of a trustee. In other words, that it was the testator's intention that his widow should possess all the powers as to the use and appropriation of the real estate devised to her the same as that of an absolute fee owner with the exception possibly that she could not dispose of the proceeds by giving it away, or devising it by will. Such conclusion is amply fortified by the beginning language of clause (3) which says: "If at the death of my wife she has not used and expended all of my estate" then what remains (remnant) is devised to Wiglesworth and wife.

It therefore follows that the court was correct in holding that the wife's deed to Llewellyn Smith conveyed a perfect title to the land herein involved, and also properly held that the vendee should accept the deed and pay the purchase price.

Wherefore, the judgment is affirmed.